## L. E. FAIRCHILD *v.* NEW ORLEANS AND NORTHEASTERN RAILROAD COMPANY.

1. RAILROAD COMPANY. *Liability for throwing down fence on right of way.*
   Where, prior to the passage of the act of March 13, 1884, making it the duty of railroad companies to put "stock-gaps and guards" wherever their roads intersect inclosure fences, a railroad company removed such a fence from its right of way, it did not incur the statutory penalty in favor of the owner of the inclosure, provided by § 989 of the Code of 1880, in case "any person shall throw down any fence inclosing land not his own." *Vicksburg and Meridian Railroad Co.* v. *Dixon,* 61 Miss. 119, cited.

2. SAME. *Removal of fence. Damage to crop. Pendency of condemnation proceedings.*
   And if, by the removal of the fence in such case, cattle entered the inclosure and destroyed a crop planted after the institution by the railroad company of proceedings to condemn for its right of way a strip of land across such inclosure, the owner is precluded from recovering damages for the destruction of his crop, on the maxim *volenti non fit injuria.*

3. SAME. *Damage from want of stock-guards. Action therefor. Evidence of promise to erect guards.*
   A railroad company had a strip of land across F.'s field condemned for its right of way and paid the damages awarded therefor. While constructing its road the fence inclosing the field was taken from its right of way, and before the gap was closed and stock-guards put in cattle got into F.'s field and damaged his crop. He sued for the statutory penalty for throwing down his fence and for the damage to his crop. On the trial he offered to prove that while the condemnation proceeding was in progress and afterward, the defendant promised to erect stock-guards so as to protect his field; but no offer was made to show that the award of damages in that proceeding was at all affected by such promise. *Held,* that the evidence offered was irrelevant and inadmissible.

APPEAL from the Circuit Court of Lauderdale County.

HON. S. H. TERRAL, Judge.

The case is sufficiently stated in the opinion of the court.

*Dial & Witherspoon,* for the appellant.

1. The appellee is liable in this action under § 989 of the Code of 1880. The language of the statute is plain and unambiguous, and the trespass of appellee comes fairly within its provisions. It says, "If any person throw down any fence inclosing land not his own, without the owner's permission, he shall pay to the owner"

the penalty therein prescribed, to be recovered in the mode there pointed out.

While this case is similar in some respects to the Dixon case, 61 Miss. 119, yet there is not the slightest resemblance to it as to the statutory liability, because in the Dixon case there never was any fence on the company's right of way, and its default was not in throwing down a fence, but was in not building one or its equivalent.

2. In the second place, we contend that when the appellee opened up the appellant's field, it became its duty to use every reasonable precaution to prevent the irruption of cattle into his field, and that the jury is to be the judge as to whether such precautions have been used or not.   We think this a good proposition of law, both upon authority and upon principle.

As to the authorities, we refer the court to the following cases decided by the Supreme Court of Vermont : 23 Vt. 387 ; 24 Vt. 487 ; 28 Vt. 103 ; 30 Vt. 297 ; and also the case of *Cummings* v. *Hannibal, etc., R. R. Co.*, 48 Mo. 512 ; and also to the case of *K.* v. *The C. C. & C. R. Co.*, 3 Ohio St. 172.

3. In the third place, we contend that the appellee was bound to put in cattle-guards, because it promised to do so.   This promise the court below refused to let us prove, and this is one of the errors we complain of.   That promise is binding on the appellee, both as a contract and also on the principle of estoppel.

*J. W. Fewell*, for the appellee.

The appellant's lands were duly condemned and he was paid a large sum of money for the number of acres taken and another large sum for damages to adjacent lands.   After the company had built its " dump," the appellant erected his fence across the dump. He planted his crop when the company was constructing its line and with full notice.   What force had the condemnation proceedings if the appellant can recover again for injuries to his crop planted under such circumstances?

There was no law compelling appellee to fence its track.   This court has recently decided that a railroad company was under no obligation to put in cattle-guards.   The case of *Crowell* v. *N. O. &*

*N. E. R. R. Co.*, 61 Miss. 631, inferentially disposes of this case, if this is any case.

If appellant was suing on the alleged promise of the engineer, he ought to have set out that promise. He did not sue on the promise or on the pretended contract or assurance of the engineer, and, of course, it was incompetent to prove such contract or promise.

The engineer had no authority to make such a promise—no such authority is shown.

CHALMERS, J., delivered the opinion of the court.

The railroad company sought and obtained condemnation of the land of appellant in order to lay its track. Having paid the price assessed by the jury, it entered on the land to erect its road-bed, and as preliminary thereto built a cattle-gap at the intersection of appellant's fence. Some days elapsed before the completion of the cattle-gap, and the present suit is brought both for the recovery of the statutory penalty for throwing down the fence and for injury to the cotton crop by intruding cattle during the interim. So far as injury to the crop is concerned, it was planted with a full knowledge of appellant after the institution of the condemnation proceeding. As to it, therefore, no recovery can be had, upon the familiar maxim of *volenti non fit injuria.* As to the claim for the statutory penalty for throwing down appellant's fence, it is settled by the case of *Vicksburg and Meridian Railroad Co.* v. *Dixon,* 61 Miss. 119, that the action will not lie, and this suit was brought before the recent amendment by the legislature devolving the duty of building cattle-gaps upon the roads. Before that time the railroads had nothing to do with the erection of cattle-guards, and the owner who desired them must build them for himself. His compensation for so doing was embraced in the award of damages by the jury in the assessment for the right of way. Their assessment covered the total cost of parallel fences for the whole way, and the erection of cattle-guards in lieu of the fences was a concession by the railroads. There could, of course, be no claim for damages for an entry upon the right of way which by payment therefor had become the property of the railroad.

The court below properly excluded proof offered to show that both since and while the condemnation proceedings were going on the railroad company promised appellant to erect the cattle-guard. As before remarked, it was the duty of the jury to have embraced these damages in the award, and there was no offer to prove that they had not done so in the present case. The heavy damages given suggest that it had been done, and apart from this we must assume that the jury did its duty. If it were competent to prove that in fact it did not, no offer was here made to show that the damages were at all affected by a promise to build a cattle-guard.

*Affirmed.*